### In re BEACON LIGHT MARINA YACHT CLUB, INC., Debtor.

### FIRST COMMUNITY BANK, Movant,

v.

### BEACON LIGHT MARINA YACHT CLUB, INC., and George A. McLean, Jr., Trustee, Respondents.

### Motion No. 5.
### Bankruptcy No. 7–90–00231.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Dec. 6, 1990.

George A. McLean, Jr., Roanoke, Va., Trustee.

R. Neal Keesee, Jr., Roanoke, Va., for First Community Bank.

Roy V. Creasy, Roanoke, Va., for intervenors.

Jeffrey A. Fleischhauer, Roanoke, Va., for debtor.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The issue before the court is a motion for relief from stay under 11 U.S.C. § 362 by First Community Bank to permit it to liquidate its asserted secured interest in a Three Bouys Sunseeker boat and to collect the remainder of the proceeds from the sale of a second Three Bouys boat being held by the trustee pending order of this court. The motion is opposed by intervenors John and Mary Matheson and the Chapter 7 trustee on the ground that the Bank does not have a perfected security interest in either the boat or the proceeds.

### Facts

Beacon Light Marina Yacht Club, Inc., the debtor ("Beacon" or "debtor"), purchased a Three Bouys Sunseeker houseboat ("Sunseeker"), I.D. Number ZZBSR154C787, from Executive Yacht and Boat Sales ("Executive") on or about June 15, 1987. This boat was financed, initially,

by First Virginia Bank. Beacon did not file an application for a certificate of title for the Sunseeker, but did file with the Virginia Department of Game and Inland Fisheries a document entitled "Boat Registration Number/Certificate of Title". Movant's Ex. 3. This document was signed by David Dean as applicant and purports to be an application for a dealer registration number for Beacon. The Department of Game and Inland Fisheries subsequently assigned number VA 2097 D to Beacon for the Sunseeker. Movant's Exhibit 2.

At the time Beacon purchased the Sunseeker from Executive, Executive transferred the manufacturer's certificate of origin to Beacon. Movant's Ex. 5. First Virginia Bank then perfected its purchase money lien in the Sunseeker by obtaining possession of the certificate of origin.

At about the same time that Beacon purchased the Sunseeker from Executive, it also purchased another Three Bouys houseboat ("Three Bouys"), I.D. Number ZZBR8814A88. A certificate of title was obtained by the debtor for this boat. Central Fidelity Bank took a perfected first lien on the Three Bouys boat by having its lien noted on the certificate of title. FCB's lien does not appear on the title.

Beacon began selling time interval interests in both the Sunseeker and the Three Bouys in early 1988. These interests appear to be similar to real estate time-share interests since they permit the holder use of the boat for a specified period during the year. As stated in the agreement of sale: "The interest created herein is an exclusive right to occupancy in the above specified use period(s), it being the intention of the seller to create an ownership in common, without right of participation...." On March 26, 1988, John and Mary Matheson purchased one such interest. As noted above, the Sunseeker I.D. Number is ZZBSR154$C$787. The contract document the Mathesons submitted with their brief showed an I.D. number of ZZBSR154$D$787. This discrepancy has not been explained.

On July 1, 1988, Dixie Financial Corporation of Virginia ("Dixie") executed a loan to Tri–State Investors, Inc., Beacon, David Dean, John Meteney, and James Deyerle in order to refinance the marina where the boats were situated. Dixie received a Note and security agreement and filed financing statements to perfect its interest in the debtor's furniture, fixtures, machinery, equipment, inventory, and accounts receivable. Dixie later assigned all of its rights and interest in the Note and security agreement to First Community Bank ("FCB".)

Subsequent to the lien taken by Dixie, the debtor paid First Virginia Bank the full amount of its lien and First Virginia Bank then released to Beacon the certificate of origin for the Sunseeker. FCB never obtained possession of the manufacturer's certificate of origin. It relies solely on the collateral package it received from Dixie in asserting lien rights in the Sunseeker and in the proceeds of sale of the Three Buoys boat. It claims that its liens are properly perfected in inventory of a dealer.

Beacon filed a petition under Chapter 11 on February 8, 1990, which was converted on June 27, 1990, by court order to a Chapter 7 proceeding. Prior to conversion, Central Fidelity Bank obtained relief from the stay to foreclose on its interest in the Three Bouys boat. The boat was sold, the sales proceeds were applied to the lien of Central Fidelity Bank and the remaining proceeds are held in escrow by the trustee pending further order of this court.

A hearing on FCB's motion for relief was held on September 5, 1990, in Roanoke, Virginia. At the hearing, Beacon Light Marina & Yacht Club Association ("Association"), through counsel, argued its motion to intervene in FCB's motion for relief. Intervention was denied to the Association, but the court allowed the motion to be amended to reflect the names of individuals asserting vessel ownership interests in the Sunseeker. An order permitting such intervention was entered on September 17, 1990, and named John and Mary Matheson as intervenors.

*Summary of the Parties' Positions*

FCB argues that Beacon is a dealer, that the Sunseeker is inventory and that the proceeds from the Three Bouys are covered

by its blanket lien. The Trustee argues that Beacon is not a dealer, and that FCB must perfect its lien by noting it on a certificate of title or by possessing a negotiable document, the manufacturer's certificate of origin. The intervenors argue that the debtor was not a dealer; hence, FCB was required to perfect its lien through a notation on the certificate of title; in the alternative, the intervenors argue that if Beacon is held to be a dealer, FCB's interest, if perfected, extends only to those weeks of the year for which no timeshare interests were sold. For the reasons stated in this opinion, the court need not address the intervenors alternative argument.

### Law

■ Boat certification, titling and registration is governed by the Code of Virginia, 1950, as amended ("Code"), § 29.1–700 et seq. Section 29.1–712 defines a dealer as "any person whom the Tax Commissioner finds to be in the regular business of selling watercraft, and who has held during the calendar year five or more watercraft for resale." There is no evidence that Beacon was in the business of selling watercraft. Also, there is no evidence that Beacon held five or more watercraft for resale during the calendar year. Since Beacon does not meet the definition of a dealer under the Virginia Code, it was required by the statutes of Virginia to obtain a certificate of title to the Sunseeker. Section 29.-1–713. No certificate of title was ever issued for the Sunseeker.

■ Under Code of Virginia § 8.9–109(4) the two boats in this case can be classified as inventory only if they are held for (1) sale, (2) lease, or (3) furnished under contracts for service. There is no evidence that the debtor held the boats out for sale or lease. The only thing the debtor sold was time periods for use of the boats. Thus, FCB's argument as to inventory classification can prevail only if the boats were furnished under contracts for service. In discussing goods to be furnished under a contract of service, the Official Comment to § 8.9–109 states:

When an enterprise is engaged in the business of leasing a stock of products to users (for example, a fleet of cars owned by a car rental agency), that stock is also included in the definition of inventory ... goods used in business are equipment when they are fixed assets or have, as identifiable units, a relatively long period of use; but are inventory, even though not held for sale, if they are used up or consumed in a short period of time in the production of some end product.

The boats owned by Beacon were not held for sale, and were not used up in the production of some other product. They were intended by the debtor to have a long period of use. In classifying goods as either equipment or inventory, courts have held that the test is the owner's use of the goods. *In re ASW III Builder–Contractors, Inc.*, 12 B.R. 29, 32 (Bkrtcy.E.D.Va., 1981). The debtor's stated intended purpose, at the time that the security interest attaches, defines the nature of the goods. *In re Rex Group, Inc.*, 80 B.R. 774, 781 (Bkrtcy.E.D.Va., 1987).

In this case, Beacon always retained control over the boats and no title ever passed to the purchasers of vessel timeshare interests. The language of the sales agreement quoted above makes it clear that the debtor intended to convey only interests in "an exclusive right to occupancy in the above specified use period(s)...." Another illustration of Beacon's exclusive ownership of the boats is the Rules and Regulations of the Beacon Light Marina and Yacht Club. Rule # 16 states, "The *manager* of the Beacon Light Marina Yacht Club *has the right to board any vessel at any time,* without prior notice, for the purpose of inspections and to see that the vessel is being operated and maintained in a good and proper condition." (emphasis added). Rule # 22 states that "An interval vessel owner that fails to vacate the boat at the end of their use period shall be deemed a 'holdover *tenant*'...." (emphasis added). This court finds that the boats owned by Beacon are equipment under Code § 8.9–109(2), which states that an item is equipment "if [it is] used or bought for use primarily in business ... or if the goods

are not included in the definitions of inventory, farm products or consumer goods."

Code § 8.9–302(3) provides that "the filing of a financing statement otherwise required by this title is not necessary or effective to perfect a security interest in property subject to ... (b) Sections 46.2–603 through 46.2–635 (now 29.1–700 et. seq.)...." Therefore, the filing of a financing statement did not perfect the interest of FCB in either boat. Code § 8.9–302(4) states that "... a security interest in property subject to the statute or treaty [listed in § 8.9–302(3)] can be perfected only by compliance therewith...." Accordingly, FCB must perfect its liens in accordance with the Virginia watercraft statutes and regulations.

Code § 29.1–724 provides that "Security interests, other than a security interest in inventory held for sale ... created in watercraft ... must be shown on the certificate of title. In such cases, the owner shall file an application ... setting forth the security interests...." FCB is not listed as a lienholder on a certificate of title on the Sunseeker because a title was never issued for the boat. Movant's Exhibit 2.

Because there was no certificate of title for the Sunseeker, the only way FCB could perfect its interest was by possession pursuant to Code § 8.9–305. Code § 8.9–305 states that "A security interest in ... negotiable documents ... may be perfected by the secured party's taking possession of the collateral...." The certificate of origin qualifies as a negotiable document. Document is defined in § 8.9–105(f) as a "document of title as defined in the general definitions of Title 8.1 within § 8.1–201...." Document of title is defined in § 8.1–201(15) as:

> includ[ing a] bill of lading, dock warrant, dock receipt, warehouse receipt or order for delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers.

Therefore, in order to have a perfected security interest in the Sunseeker under § 8.9–305, FCB must have possession of the certificate of origin. Since FCB is not in possession of the certificate of origin, it is unperfected and the lien of the trustee in bankruptcy as a hypothetical lien creditor on the date of the filing of the petition prevails. Section 8.9–301(3); *Virginia Nat'l Bank v. Yale Mining Corp.*, 39 B.R. 201 (Bkrtcy.W.D.Va.1984).

As to the proceeds of the Three Bouys boat sold by Central Fidelity Bank, FCB must first have a perfected interest in the boat in order to be able to assert a lien against the remaining proceeds. As stated above, FCB is required by the statutes of Virginia to be listed as a lien creditor on the certificate of title of the boat in order to be perfected. A title was issued for this boat, but there was no evidence presented that FCB was listed on the title as a secured creditor. Since FCB cannot assert a perfected security interest in the Three Bouys boat, it cannot assert a perfected interest in the remainder of the proceeds.

The court finds that FCB does not have a perfected interest in either the Sunseeker or the proceeds of the Three Bouys boat. Accordingly, the motion for relief is denied. An appropriate order will be entered implementing this memorandum opinion.